Lance G. Greene, Esq. (SBN 164971)
Law Offices of Lance G. Greene
2121 Avenue of the Stars
Suite 800
Century City, California 90067
(310) 407-8627
lggreenelaw@gmail.com

Attorney for Plaintiff GAVIN OWENS

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GAVIN OWENS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Bunker 13 Movie, LLC, a Wyoming limited liability company; Syrus Media LLC a Wyoming limited liability company and Sasha Yelaun A.K.A. Alexander Yelaun, an individual, and DOES 1 through 10<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. BREACH OF CONTRACT.<br>2. BREACH OF GUARANTY.<br>3. FORECLOSURE OF SECURITY INTEREST<br>4. ACCOUNT STATED<br>5. SPECIFIC PERFORMANCE<br>6. FEDERAL STATUTORY FRAUD |

Plaintiff, GAVIN OWENS, hereinafter referred to as ("Plaintiff" or "Lender"), by and through undersigned counsel, hereby alleges against Defendants Bunker 13 Movie, LLC ("Borrower") and Sasha Yelaun A.K.A. Alexander Yelaun ("Guarantor") and Syrus Media LLC as follows:

**PARTIES**

1. Plaintiff Gavin Owens is an individual residing in Burbank, California. At all times relevant herein, Plaintiff acted as the Lender under the subject Bridge Loan and Security Agreement.

2. Defendants BUNKER 13 MOVIE, LLC and SYRUS MEDIA LLC are Wyoming limited liability companies with their principal place of business located at 1308 Brescia Walk, Leander, TX 78641.

3. Defendant Sasha Yelaun A.K.A. Alexander Yelaun is an individual residing in Leander, Texas. Yelaun is the Producer of the motion picture "Bunker 13" and executed the subject agreements as both an authorized representative of the Borrower and as a personal Guarantor.

4. The true names and capacities of the defendants DOES 1 through 10, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 10, inclusive, when the same have been ascertained.

5. Plaintiff is also informed and believes and thereon alleges that DOES 1 to 10 were the agents, principals, and/or alter egos of Defendants, at all times herein relevant, and that they are therefore liable for the acts and omissions of Defendants.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants because they expressly consented to the jurisdiction of California and the application of California law in Section 25 of the Bridge Loan and Security Agreement.

8. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred here, Plaintiff resides within this district, and the parties contractually agreed to California as the governing forum.

## FACTUAL ALLEGATIONS

9. On or about October 9, 2025, Plaintiff and Defendants entered into a written Bridge Loan and Security Agreement (the "Agreement") and related documents and Notices.

(See Exhibits A-E attached hereto)

10. Under the terms of the Agreement, Plaintiff extended a bridge loan to Borrower in the principal amount of $148,950.00.

11. The Agreement provided for a 12% flat coupon ($17,874.00) to be paid upon the Maturity Date.

12. The parties agreed to a fixed Maturity Date of November 30, 2025.

13. The Agreement established a "Grace Period" of five (5) business days following the Maturity Date, ending on December 5, 2025.

14. Per Section 12(a) of the Agreement, if the loan remained unpaid after the Grace Period, "Default Interest" began to accrue daily at a rate of 3% per week on the principal during the "Initial Default Period" (the first 28 days).

15. Pursuant to Section 12(b), following the Initial Default Period, the "Terminal Default Period" commenced, during which interest accrued daily at 4% per week on all "Amounts in Arrear". 14. "Amounts in Arrear" is defined to include unpaid principal, the coupon, and previously accrued default interest and legal fees, effectively resulting in daily compounding.

16. As a condition of the loan, Defendant Sasha Yelaun executed a personal guaranty, becoming "Guarantor" of all Borrower's obligations.

17. To secure the "Repayment Obligation," Borrower granted Plaintiff a first-position, perfected, priority lien and security interest in all assets of the Borrower (the "Collateral"). 17. The Collateral specifically includes all intellectual property of the motion picture "Bunker 13," its script, media, revenues, and UAE tax rebates ("Takeout Proceeds").

18. Defendants failed to pay the Repayment Obligation on the Maturity Date of November 30, 2025.

19. Defendants further failed to cure the default during the Grace Period or at any time thereafter.

20. On March 1, 2026, Plaintiff issued a "Final Demand Prior to Enforcement," noting that the total amount due had reached $316,282.13.

21. On March 1, 2026, Defendant Sasha Yelaun acknowledged the default in writing, stating, "I... accept the terms of the conditional extension exactly as stated" and confirming the non-negotiable deadline for compliance.

22. Despite these acknowledgments, Defendants have failed to remit the Total Due or satisfy the conditions of the extension.

## FIRST CAUSE OF ACTION

**Breach of Contract**

**(Against Bunker 13 Movie, LLC)**

23. The allegations of paragraphs 1 through 22 are realleged and are incorporated herein by reference as though fully set forth.

24. On or about October 9, 2025, Plaintiff and Borrower entered into the Bridge Loan and Security Agreement (the "Agreement"), a valid and binding contract. Under the Agreement, Plaintiff agreed to advance $148,950.00 to Borrower for production expenses related to the motion picture "Bunker 13" (the "Picture").

25. Plaintiff performed all conditions, covenants, and promises required of him by timely funding the principal amount of $148,950.00 to the account designated by Borrower.

26. Pursuant to the Agreement, Borrower was obligated to repay the principal plus a 12% flat coupon ($17,874.00) no later than the Maturity Date of November 30, 2025.

27. Borrower breached the Agreement by: (1) Failing to remit the full Repayment Obligation on or before the Maturity Date; (2) Failing to cure said default within the contractually provided five-business-day grace period ending December 5, 2025; and (3) Failing to pay the accrued Default Interest, which, per Section 12, escalated from 3% per week (initial) to 4% per week (terminal), compounding daily on all amounts in arrears.

28. As a direct and proximate result of Borrower's breach, Plaintiff has suffered actual damages in the amount of $316,282.13 as of March 1, 2026. This sum includes $148,950.00 in principal, $17,874.00 in coupon, $98,663.13 in accrued default interest, $44,292.37 in other contractual fees/charges, and $6,495.00 in legal fees.

29. Damages continue to accrue at the contractual default rate of 4% per week, compounding daily, until judgment is entered.

**SECOND CAUSE OF ACTION**

**Breach of Written Guaranty**

**(Against Defendant Sasha Yelaun)**

30. The allegations of paragraphs 1 through 29 are realleged and are incorporated herein by reference as though fully set forth.

31. To induce Plaintiff to enter into the Agreement and provide the loan, Defendant Sasha Yelaun executed a personal Guaranty (as set forth in Sections 15 and 20 of the Agreement), whereby she unconditionally guaranteed the full and punctual payment of all Borrower's obligations.

32. The Guaranty provides that upon an "Event of Default" by the Borrower, the Guarantor's liability is immediate, and Plaintiff is not required to exhaust remedies against the Borrower before seeking payment from the Guarantor.

33. An Event of Default occurred when Borrower failed to pay the Repayment Obligation by the Maturity Date. Plaintiff provided notice of said default and a final demand for payment on March 1, 2026.

34. On March 1, 2026, Defendant Yelaun acknowledged the debt and her personal obligation to pay in writing, yet she has since failed and refused to remit the funds.

35. Defendant Yelaun has breached the Guaranty by failing to pay the outstanding balance of $316,282.13 plus ongoing interest.

36. Pursuant to the terms of the Guaranty, Defendant Yelaun is jointly and severally liable for the full amount of the debt.

**THIRD CAUSE OF ACTION**

**Foreclosure of Security Interest and Replevin**

**(Against All Defendants)**

37. The allegations of paragraphs 1 through 36 are realleged and are incorporated herein by reference as though fully set forth.

38. Pursuant to the Agreement and the subsequent Security Agreement, Borrower pledged to Lender, as security and collateral (the "Security"), an unencumbered, first-position, perfected, priority lien on, and security interest in, all right, title, and interest in and to all assets of the Borrower.

39. Specifically, per the terms of the Agreement, the "Borrower’s Security" includes, but is not limited to: (1) All intellectual property and proprietary rights in and to the screenplay/script for the Picture; (2) All footage, digital files, masters, and media produced in connection with the Picture; (3) All revenues generated in connection with the distribution or exploitation of the Picture, including without limitation revenues from the rights to pre-sold distribution territories; and (4) All tax credits or rebates generated in connection with the production of the Picture (such as the Abu Dhabi Film Commission rebates).

40. The parties agreed that this security interest is subordinate **only** to mandated payments to guilds (the "Permitted Lienholders").

41. Defendants' failure to pay the loan constitutes a material default, triggering Plaintiff's right to immediate possession and control over the Collateral under the Uniform Commercial Code and the express terms of the Security Agreement.

42. Plaintiff is entitled to a judicial declaration of his priority lien and a judgment authorizing the seizure and/or sale of the Script and all other Collateral to satisfy the outstanding debt.

## FOURTH CAUSE OF ACTION

**Account Stated**

**(Against All Defendants)**

43. The allegations of paragraphs 1 through 42 are realleged and are incorporated herein by reference as though fully set forth.

44. On March 1, 2026, an account was stated between Plaintiff and Defendants in the amount of $316,282.13 via the "Amount Due Notice."

45. Defendants, through Sasha Yelaun, agreed to the accuracy of this balance in writing on March 1, 2026, and promised to pay the same.

46. No part of said sum has been paid, and the full amount remains due, owing, and unpaid.

**FIFTH CAUSE OF ACTION**

**Specific Performance – Equitable Relief Arising from Breach of Contract**

**(Against All Defendants)**

47. The allegations of paragraphs 1 through 46 are realleged and are incorporated herein by reference as though fully set forth.

48. The Bridge Loan and Security Agreement, as well as the February 28, 2026, Security Agreement, constitute valid and binding contracts wherein Defendants agreed to deliver specific, unique Collateral to Plaintiff in the event of an uncured default.

49. The Collateral at issue, including the original Script, raw media footage, master files, and intellectual property for the motion picture "Bunker 13", is unique, one-of-a-kind property for which monetary damages alone are inadequate. The value of these creative assets, and the ability to control their distribution to recoup the debt, cannot be readily calculated or replaced by market substitutes.

50. Plaintiff has performed all conditions, covenants, and promises required of him under the Agreement, having fully funded the loan. Plaintiff remains ready, willing, and able to perform any remaining ancillary obligations under the agreements.

51. Defendants have failed and refused to perform their contractual obligations to surrender the Collateral and execute the necessary lien-perfection documents despite a firm, non-negotiable deadline of March 4, 2026.

52. Plaintiff is entitled to a decree of specific performance compelling Defendants to: (1) Deliver all physical and digital embodiments of the Script and Media; (2) Execute and deliver all UCC-1 financing statement authorizations and ancillary lien-perfection documents; and (3) Transfer all rights necessary for Plaintiff to intercept the "Takeout Proceeds" and UAE tax rebates.

**SIXTH CAUSE OF ACTION**

**Federal Statutory Fraud / Violation of the False Claims Act, 31 U.S.C. §§ 3729-3733**

**(Against All Defendants)**

53. The allegations of paragraphs 1 through 52 are realleged and are incorporated herein by reference as though fully set forth.

Upon information and belief, Defendants have sought, or are in the process of seeking, government-funded production incentives, tax credits, and rebates from federal or foreign governmental agencies including but not limited to UAE-based government rebates which are often facilitated through international treaties or federal film-office programs. Furthermore, Defendants have engaged in this conduct previously which was unbeknownst to Plaintiff in separate cases styled *Tim Schaaf vs Bad Sleep Films, Ltd. et al (2025 FL) and Edge Code Films LLC V. Hell Fire Films LLC et al (2024 CA.* As such, Defendants intended to defraud Plaintiff and never intended to repay Plaintiff at the time they induced and deceived Plaintiff in lending the monies at issue in this Complaint.

54. In connection with the "Takeout Proceeds" and tax rebates described in the Security Agreement, Defendants have knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim for government-related funds.

55. Specifically, Defendants represented to Plaintiff that the tax rebates were unencumbered and would be used as a primary source of repayment, while simultaneously making contrary representations to government authorities regarding the ownership, lien status, or expenditure of the funds associated with the production of "Bunker 13."

56. By knowingly submitting false claims or making false statements to secure government-backed production incentives, Defendants have violated 31 U.S.C. § 3729.

57. As a result of these false claims, Plaintiff, as a party with a vested interest in these government-sourced rebates, has been defrauded of the security promised under the Agreement.

58. Pursuant to 31 U.S.C. § 3729, Plaintiff seeks civil penalties of not less than $5,500 and not more than $11,000 per claim, plus treble damages (three times the amount of damages sustained by the government/interested parties) and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. Against Defendants, jointly and severally, in the amount of $316,282.13, plus daily compounding interest at the contractual rate of 4% per week until the date of judgment.

2. For an order of specific performance compelling the immediate turnover of the unique Script, master media files, and all signed lien-perfection documents for "Bunker 13."

3. For civil penalties and treble damages pursuant to 31 U.S.C. § 3729 arising from the fraudulent handling of government-sourced tax rebates and production incentives.

4. For a decree of foreclosure on all collateral described in the Security Agreement.

5. For reasonable attorneys' fees in the amount of $6,495.00 (plus any additional fees incurred in this litigation) and costs of suit.

6. For such other and further relief as the court may deem proper.

DATED: March 31. 2026

Respectfully submitted,

LAW OFFICES OF LANCE G. GREENE
A Professional Corporation

By: LANCE GREENE

Lance G. Greene,
Attorneys for Plaintiff

EXHIBIT "A"

# BRIDGE LOAN AND SECURITY AGREEMENT

This Bridge Loan and Security Agreement (the "Agreement") is entered into as of the 9th Day of October, 2025:

Lenders: Each Lender Party ("Lender") is set forth in Schedule A to this Agreement, attached hereto and incorporated herein by this reference;

Borrower: Bunker 13 Movie, LLC, a limited liability company organized and existing under the laws of the State of Wyoming ("Borrower");
Sasha Yelaun, located at 1308 Brescia Walk Leander, TX 78641

Guarantor: Sasha Yelaun

Key Terms:
Net Loan to Production:
Commencement Date: $148,950 (includes wire transfer fees)
Premium Fees: October 9, 2025
Maturity Date: 12% flat
Guarantor: November 30, 2025
Recitals: Sasha Yelaun
WHEREAS, Borrower has certain capital needs associated with its production of

the motion picture currently known as "Bunker 13" (the "Picture");

WHEREAS, Borrower and Lender wish for Lender to satisfy Borrower's capital needs in the form of a bridge loan extended by Lenders to Borrower (the "Bridge Loan"), and, in connection therewith, Borrower is offering certain security and collateral

WHEREAS, all of the terms, rights and obligations associated with the Bridge Loan, including without limitation security and collateral, are set forth hereafter in this Agreement;

NOW, THEREFORE, in consideration of the mutual benefits inuring to the Parties, and other good for and for valuable consideration, the receipt, adequacy and legal sufficiency of which the Parties hereby acknowledge, IT IS HEREBY AGREED AS FOLLOWS:

BRIDGE LOAN

1. *The Loan*. On or about the Commencement Date (defined below), the Lenders shall extend to Borrower a Bridge Loan in the cumulative amount of up to One Hundred Forty Eight Thousand Ninety Hundred Fifty Dollars (USD 148,950) (the "Loan Amount"), all as follows:

2. *Coupon*. The following terms apply to the coupon ("Coupon") owed by Borrower to Lenders under this Agreement and Bridge Loan:

(a) the base Coupon owed by Borrower to each Lender is Twelve percent (12%) flat;

3. *Maturity Date*. The Bridge Loan shall mature upon the earlier of the following dates (the "Maturity Date"):

(a) the date upon which the Borrower transfers the Repayment Obligation Lender in the amount of $166,824 in full;

(b) upon an Event of Default (defined below in Paragraph 7); or

(c) November 30, 2025.

The Notes associated with the Bridge Loan shall become due and payable on the Maturity Date.

4. *Repayment*. Upon the Maturity Date, the Borrower will be required to pay each of the following amounts (the " Repayment Obligation "):

(a)the Loan Amount and the Coupon to Lenders;

(b)any Default Interest due to Lender; and

5. *Source of Repayment*. The intended primary source of Borrower's satisfaction of the Repayment Obligation shall be the proceeds of a financing against the UAE rebated provided a tax lender "Takeout Proceeds").

SECURITY

6. *Pledged Security*. The Borrower as indicated below, hereby pledges to Lender, as security and collateral (the "Security"), until the Repayment Obligation has been satisfied in full, an unencumbered, first-position, perfected, priority lien on, and security interest in, all right, title and interest in and to all of the following:

(a) the Borrower pledges all assets of the Borrower ("Borrower's Security"), including, but not limited to, all intellectual property of the Picture, such as (without limitation) its script, media produced in connection with the Picture, revenues generated in connection with distribution or exploitation of the Picture (including without limitation revenues from the rights to pre-sold distribution territories), tax credits or rebates generated in connection with production of the Picture, and the like, subordinate only to the any mandated payments to guilds (the "Permitted Lienholders");

(b) the Borrower pledges all Takeout Proceeds;

EVENT OF DEFAULT

7. *Default Defined*. Each of the following occurrences shall constitute an "Event of Default" under this Agreement:

(a) The failure of Borrower to pay the entirety of the Repayment Obligation on or before the Maturity Date.

(b) Any uncured material breach by Borrower of any representation or warranty of Borrower in this Agreement, if remaining uncured ten (10) days after receipt of notice provided by Gavin Owen or any Lender.

(c) Any uncured material failure of Borrower to comply with its deliveries or post-closing obligations within this Agreement if remaining uncured ten (10) days after receipt of notice provided by Gavin Owen or any Lender.

(d) Borrower commences a voluntary proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect; or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or a substantial part of its property; or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it; or shall make a general assignment for the benefit of creditors or shall generally fail to pay its debts as they become due; or shall generally fail to pay its debts as they become due; or shall take any corporate action to authorize any of the foregoing.

(e) If there shall exist or occur any event or condition which in the Parties' unified good faith business judgment (exercised in Borrower's sole, reasonable, good faith business discretion) would have a material, manifestly adverse effect on the ability or obligation of Borrower to repay its Repayment Obligation under this Agreement to Lenders.

8. *Acceleration of Repayment*. Within seven (7) business days of the date on which any Event of Default has occurred, Borrower shall pay the Repayment Obligation.

DEFAULT INTEREST

9. *Grace Period*. Following the Maturity Date, should any of the Repayment Obligation remain unpaid, Borrower shall enjoy a grace period of five (5) business days,1 during which time the Borrower can cause the Repayment Obligation to be paid without any elevated interest (the "Grace Period").

10. *Amounts in Arrear*. In the event Borrower fails to cause the entirety of the Repayment Obligation to be paid as of the expiration of the Grace Period, any amounts continuing to be owed ("Amounts in Arrear") shall accrue interest at the default interest rates ("Default Interest"), as set forth below in Paragraph 12.

11. *Defining Components of Amounts in Arrear*. All Amounts in Arrear are comprised of the following components: (a) unpaid principal from the Total Loan Amount ("Principal"); (b) any unpaid portions of the Administrator's Fee; (c) any unpaid portion of the Coupon; and (d) any unpaid portions of Default Interest and Legal Fees (defined in Paragraphs 12 and 16 below) (together, with the Coupon, "Sums Above Principal").

12. *Default Interest Rates*. Default Interest shall accrue daily at the following rates:

(a) for the first four (4) weeks following the Grace Period (the "Initial Default Period"), three percent (3%) per week, accruing daily, on Amounts in Arrear constituting Principal;

(b) for each one-week period after the Initial Default Period (the "Terminal Default Period"), four percent (4%) per week, accruing daily, on all Amounts in Arrear.

REMEDIES

13. *Remedies Cumulative*. All of the remedies provided for in this Agreement shall in no way limit or prohibit the exercise of other remedies afforded under this Agreement, all such remedies being cumulative.

14. *General Remedies*. In the case of an Event of Default, any non-defaulting Party shall have all rights available at law, in equity, and under statute to remedy such default; provided that Lender shall not be entitled to seek to or obtain injunctive relief or seek to enjoin or otherwise restrain or interfere with the production, completion, exhibition, advertising, promotion, marketing and/or exploitation of the Picture for any reason whatsoever, all of which remedies are hereby irrevocably waived by Lender.

15. *Enforcement against Guarantor*. In case of an Event of Default, which remains uncured for ten (10) days following the expiration of the Grace Period, Lenders, and/or Gavin Owen on behalf of Lenders, shall have the right to bring a summary legal proceeding or

[1] A "business day" shall mean any day of the week other than Saturday, Sunday and a federal holiday.

action directly against Guarantor to enforce the obligations of Borrower under this Agreement. In any such proceeding, Guarantor waives the right to trial by jury, and agrees to as expedited of a process, including but not limited to the commencement of a proceeding by summary judgment in lieu of complaint, as the Court may permit. In that connection, the undersigned Guarantor hereby waives any defense alleging or arguing that the Guaranty is not an instrument for the payment of money only, as defined under, among other places, Section 3213 of the Civil Practice Law and Rules of the State of California. The Legal Fees provision set forth below shall be applied against Guarantor in the case of any proceeding successfully enforcing the Event of Default against Borrower or Guarantor.

16. *Legal Fees*. All reasonable fees, costs and expenses, including but not limited to reasonable attorneys' fees, costs and expenses, incurred by any Party reasonably, and in conformity with this Agreement, in successfully enforcing an Event of Default ("Legal Fees") shall be charged back to the Party in default provided that Lenders will first withdraw any excess funds from the Legal Reserve in such instance. In addition, in the event of any legal proceeding of any kind seeking to adjudicate the terms, rights, and obligations created, associated with, and arising under this Agreement, the prevailing Party shall be entitled to recover its Legal Fees from the opposing party in such proceeding. The following terms shall apply to this Paragraph:

(a) In the case of any Event of Default by Borrower, Lender shall have the initial right to enforce such default, both on its own behalf and on behalf of Lender, and shall be entitled to recover any of its Legal Fees associated with such enforcement.

(b) In the case of any Event of Default not cured within thirty (30) days, any Lender shall have the right to seek to enforce rights of recovery for amounts owing to such Lender. If Lender elects to pursue legal remedies on his/her/its own, then Lender shall have the right to recover all Legal Fees associated with such enforcement provided that Lender will first withdraw any excess funds from the Legal Reserve in such instance ("Lenders' Legal Fees").

CREDITS

17. Subject to Borrower's receipt of the Net Loan to Production and Lender not being in default hereof, Lender shall be entitled to receive the following: (a)

(a) one (1) "Executive Produced By" credits (for ______), on screen, on a single or shared card, in the main titles, and in paid and excluded ads if any other executive producer is credited therein, subject to distributor exclusions and exceptions, in a size of type, style of font, and duration on screen no less favorable than any other individual executive producer credit;

CONDITIONS PRECEDENT TO FUNDING

18. Lenders' obligation to lend the Total Loan Amount as set forth in Paragraph 1 and in and throughout this Agreement shall be subject to satisfaction of each of the conditions precedent set forth below:

(a) the full execution of this Agreement, the Notes, and any other customary ancillary documents necessary to reflect the Bridge Loan;

(b) a confirmation by Borrower there are no liens against Borrower or the Picture, other than by the Permitted Lienholders, and/or, in the case there are any pre-existing liens, then the removal or subordination of such liens;

(c) any reasonable additional requirement(s) as requested by Gaven Owen and/or its counsel.

REPRESENTATIONS AND WARRANTIES

19. Borrower hereby represents and warrants that all documentation it/he has provided to Lenders and Gaven Owen are authentic, bona fide, accurate, and fully genuine.

20. Borrower hereby represents and warrants the authenticity, genuineness, and bona fides of all Borrower's Security.

21. Borrower hereby represents and warrants that it owns all rights, title, and interests in and to the Picture.

22. Lender hereby represents and warrants he/she/it has relied solely and exclusively upon the representations made by Borrower and the materials provided by Borrower, and has not relied on any other statements or representations.

23. Each Lender hereby represents and warrants he/she/it qualifies as an "accredited investor" under the rules and requirements set forth the United States Securities and

Exchange Commission. Lender and Borrower hereby acknowledge and agree that, for the sake of clarity, this Agreement is intended to be a debt instrument and it is not governed by securities law of any state or country.

24. All Parties hereby represent and warrant that: (a) he/she/it is duly authorized to enter into this Agreement, to grant the rights herein granted and to perform all its obligations hereunder; (b) this Agreement constitutes the legal, his/her/its valid and binding agreement and obligation, enforceable against such Party in accordance with its terms; and (c) the execution and performance of this Agreement are not in conflict with any law or any indenture, agreement, restriction or undertaking to which such Party is bound or affected.

MISCELLANEOUS

25. This Agreement and the rights and obligations of the Parties hereunder shall be governed by and construed in accordance with the laws of the State of California without giving effect to any conflict of law provision.

26. EACH PARTY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT THEY MAY HAVE OR HEREAFTER HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE UNDERLYING TRANSACTIONS.

27. If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, such provision shall be enforced to the maximum extent permitted by law and the remaining provisions shall remain in full force and effect.

28. The terms of this Agreement shall constitute the integrated agreement as between the Parties as to the subject matter of this Agreement. This Agreement supersedes all previous negotiations and discussions between the Parties with respect to the matters stated herein, and no parol evidence of any prior or other agreement shall be permitted to contradict or vary the terms hereof.

29. Each Party represents and warrants that he/she/it/they has/have had the opportunity to consult with legal counsel of his/her/its/their choice, are fully aware of the terms contained in this Agreement and has/have voluntarily and without coercion or duress of any kind, entered into this Agreement and the documents executed in connection with this Agreement, if applicable, and have not entered into this Agreement in reliance upon any inducement or promise by any Party or person not contained herein.

30. No termination, waiver, modification or amendment to this Agreement shall be binding unless in writing and signed by all Parties.

31. The failure of a Party to take action as a result of a breach of this Agreement by another Party constitutes neither a waiver of any particular right related to such breach nor a waiver of either's right to enforce any provision of this Agreement through any remedy granted by law or this Agreement.

32. No consent or waiver under this Agreement shall be effective unless in writing. No waiver of any breach or default shall be deemed a waiver of any breach or default thereafter occurring. No reliance upon or waiver of one or more provisions of this Agreement shall constitute a waiver of any other provisions hereof.

33. This Agreement shall bind and inure to the benefit of the Parties and each of its/his/her/their respective heirs, personal representatives, successors and assigns; provided, however, that Borrower and Lender shall not assign its obligations under this Agreement (other than the right to receive payment) without prior written consent of all Lenders. In the event any of Lender assigns its rights or obligations hereunder, Lender agrees to promptly provide Borrower with written notice of such assignment.

34. This Agreement may be executed and delivered in counterparts, including by PDF e-mail, each of which shall be deemed to be an enforceable original and all of which together shall constitute one enforceable instrument.

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Agreement as of the date first above written.

As for Borrower, Bunker 13 Movie, LLC:

Name: Sasha Yelaun
Title: Member

Lender, Gavin Owens

Name:
Title: Member

Personal Guarantor (Sasha Yelaun)

Wire transfer codes
October 9, 2025

-VE8BXUERP
-VEHLLV6XZ

EXHIBIT "B"

## Security Agreement

**Date: ___________________**, 2026

**Parties**

**Lender:**
**Gavin Owens**
211 N Buena Vista St
Burbank, CA

**Borrower:**
**Bunker 13 Movie, LLC**
1308 Brescia Walk
Leander, TX 78641

**Guarantor (and Co-Borrower for security purposes, where applicable):**
**Sasha Yelaun**
1308 Brescia Walk
Leander, TX 78641

## Recitals

A. Borrower received a bridge loan in the original principal amount of **US $148,950.00** pursuant to that certain **Bridge Loan and Security Agreement dated October 9, 2025** (the "Credit Agreement").

B. The Credit Agreement provides for a **12% flat coupon**, a **maturity date of November 30, 2025**, default interest following expiration of a five-business-day grace period, acceleration upon Event of Default, and a **first-position security interest in all assets of Borrower**, including Picture-related IP, revenues, presold rights, tax credits, rebates, and Takeout Proceeds.

C. Borrower is in default, and Guarantor guaranteed Borrower's obligations. The parties now execute this Security Agreement to memorialize and perfect Lender's collateral rights.

### 1. Grant of Security Interest

Borrower hereby grants to Lender a **first-position, perfected, priority lien and security interest** in the Collateral described in Section 2.

Guarantor joins in this Security Agreement to acknowledge, consent to, and subordinate her rights (if any) in the Collateral, and to secure her obligations under her guaranty.

## 2. Collateral

"**Collateral**" means **all assets of Borrower**, including but not limited to:

1. All **intellectual property** relating to the motion picture presently entitled **"Bunker 13"**, including all scripts, footage, recordings, and materials;
2. All **media**, production elements, and derivative materials;
3. All **revenues** arising from distribution, licensing, or exploitation of the Picture, including **presold territory rights**;
4. All **tax credits**, **rebates**, and **Takeout Proceeds**;
5. All **accounts, general intangibles, chattel paper, instruments, deposit accounts, supporting obligations**, and all **proceeds** and **products** of the foregoing;
6. Subordinate only to **Permitted Lienholders** (mandatory guild payments).

## 3. Obligations Secured

This Security Agreement secures all obligations of Borrower and Guarantor to Lender under the Credit Agreement and any ancillary documents, including:

- **Principal:** $148,950.00
- **12% flat coupon amount**
- **Default Interest** at contractual rates
- **Legal fees, costs, and expenses**
- All sums comprising the **Repayment Obligation**, whether now existing or later arising.

## 4. Perfection; Further Assurances

Borrower and Guarantor authorize Lender to **prepare and file UCC-1 financing statements** and any amendments or continuations needed to perfect or maintain Lender's security interest, in **Wyoming**, **Texas**, **California**, and any other appropriate jurisdiction.

Borrower and Guarantor shall promptly execute any **ancillary documents**, lien releases, subordinations, certificates, and verifications necessary to maintain **perfection and priority** of Lender's lien.

## 5. Representations, Warranties, and Covenants

Borrower and Guarantor represent, warrant, and covenant that:

- Borrower owns rights in the Collateral free and clear of liens except **Permitted Lienholders**;

- Collateral will be preserved, protected, and insured where appropriate;
- No transfer, assignment, or encumbrance of Collateral will occur except as permitted by the Credit Agreement;
- All further documents reasonably requested by Lender to maintain perfection will be executed without delay.

## 6. Events of Default; Remedies

Any **Event of Default** under the Credit Agreement constitutes a default under this Security Agreement.

Upon default:

- Lender's remedies are **cumulative**, including all rights under the **Wyoming Uniform Commercial Code**;
- Lender may **collect accounts**, notify account debtors, and **foreclose** upon or **dispose** of the Collateral;
- Lender may enforce directly against **Guarantor** under her guaranty;
- Lender may exercise any **judicial or non-judicial remedy** available under Wyoming law.

No delay or partial exercise of remedies constitutes a waiver.

## 7. Governing Law; Venue; Jury Waiver

This Security Agreement is governed by and construed in accordance with the **laws of the State of Wyoming**, without regard to conflict-of-law principles.

The parties **knowingly and voluntarily waive trial by jury** to the fullest extent permitted by law.

Venue for enforcement may lie in **any court of competent jurisdiction** consistent with the parties' agreements.

## 8. Notices

**Borrower:**
Bunker 13 Movie, LLC
1308 Brescia Walk
Leander, TX 78641

**Guarantor:**
Sasha Yelaun
1308 Brescia Walk
Leander, TX 78641

**Lender:**
Gavin Owens
211 N Buena Vista St
Burbank, CA

**9. Miscellaneous**

This Security Agreement **supplements** the Credit Agreement and is not a waiver or modification of any rights thereunder.

It may be executed in **counterparts**, and signatures transmitted by PDF/email are binding. If any provision is unenforceable, the remainder shall remain in full force.

**Signatures**

**BORROWER:**
**Bunker 13 Movie, LLC**
By: Sasha Yelaun ____
Name/Title: Producer/Guarantor
Date: ________________________________

**GUARANTOR:**

**Sasha Yelaun**

Date: ____________________________

**LENDER:**

**Gavin Owens**

Date: ____________________________

EXHIBIT "C"

**UCC-1 FILING AUTHORIZATION AND COLLATERAL DESCRIPTION**

Date: ____________________, 2026

**Borrower and Guarantor, Sasha Yelaun**
**1308 Brescia Walk**
**Leander, Texas 78641**

I, SASHA YELAUN, hereby irrevocably authorize Lender and/or Lender's agents to prepare and file one or more UCC-1 financing statements, amendments, and continuations describing the collateral granted under Paragraph 6 of the Bridge Loan and Security Agreement dated October 9, 2025.

**Collateral Description.** All assets of Borrower, including, without limitation: all intellectual property related to the motion picture currently known as "Bunker 13", including script(s), media produced in connection with the Picture, all revenues generated from distribution or exploitation (including presold territory rights), tax credits, rebates, and Takeout Proceeds; together with all proceeds and products thereof; and all general intangibles, accounts, chattel paper, instruments, deposit accounts, and supporting obligations relating thereto; subordinate only to mandated payments to guilds ("Permitted Lienholders").

BORROWER / GUARANTOR:

______________________________
Sasha Yelaun
1308 Brescia Walk
Leander, TX 78641
Date: ________________, 2026.

EXHIBIT "D"

# Bunker 13 Bridge Loan - Amount Due as of March 1, 2026

Borrower: Bunker 13 Movie, LLC

Guarantor: Sasha Yelaun

Agreement Date: October 09, 2025

Maturity Date: November 30, 2025

## Key Dates

| Milestone | Date |
|---|---|
| Commencement Date | October 09, 2025 |
| Maturity Date | November 30, 2025 |
| Grace Period End (5 business days) | December 05, 2025 |
| Default Interest Start | December 06, 2025 |
| Initial Default Period End (28 days) | January 02, 2026 |
| Terminal Default Period Start | January 03, 2026 |

## Amounts Due Calculation

| Component | Amount |
|---|---|
| Principal | $148,950.00 |
| Coupon (12% flat) | $17,874.00 |
| Default Interest — Initial (3%/week × 28 days on principal) | $17,874.00 |
| Default Interest — Terminal (4%/week, daily compounding) to Feb 2 | $35,683.63 |
| Other Fees/Charges (aggregate) | $44,292.37 |
| Legal Fees | $6,495.00 |
| Total as of Feb 2, 2026 (updated) | $271,169.00 |

| | |
|---|---|
| Accrued Default Interest (Feb 2 → Mar 1, 27 days @ 4%/week daily) | $45,113.13 |
| Total as of Mar 1, 2026 | $316,282.13 |

## Methodology & Assumptions

• No payments have been received toward principal, coupon, or any interest to date.
• Legal fees of $6,495.00 are now included as a separate line item.

• 'Other Fees/Charges' represents any additional amounts required to reconcile the Feb 2, 2026 subtotal prior to legal fees.

• Grace period calculated as five (5) business days (Monday–Friday), with no federal holidays occurring during December 1–5, 2025.

• Default Interest for the Initial Default Period (first 28 days after grace) accrues daily on principal only at 3% per week.

• From the start of the Terminal Default Period onward, Default Interest accrues daily at 4% per week on all Amounts in Arrear (principal + coupon + accrued default interest + fees), which results in daily compounding.

EXHIBIT "E"

**March 1, 2026**
Bunker13 Movie, LLC
Attn: Sasha Yelaun, Guarantor
1308 Brescia Walk
Leander, TX 78641

# Re: Immediate Action Required — Imminent Litigation / Final Demand Prior to Enforcement

Dear Sasha Yelaun and Bunker13 Movie, LLC:

This letter serves as your final and unequivocal notice that you remain in material, uncured default under the Bridge Loan and Security Agreement dated October 9, 2025. Your failure to satisfy the repayment obligations, principle, coupon, and all accrued default interest, constitutes a direct breach of contract and triggers the full range of Lender's remedies.

You have been in continuous default, and the outstanding balance continues to increase daily. As of March 1, 2026, the total amount owed is:

**TOTAL DUE: $316,282.13**

Your failure to cure this default has already activated Lender's enforcement rights. However, before filing suit and perfecting lien enforcement remedies, Lender is willing to provide one final, strictly conditioned extension.

## FINAL CONDITIONAL EXTENSION — NON-NEGOTIABLE

To avoid the immediate filing of a lawsuit and UCC-1 lien enforcement, you must complete all the following actions **NO LATER THAN Wednesday at 5:00 PM**:

1. Execute ALL collateral and security documents, including:
   (a) Security Agreement;
   (b) UCC-1 Financing Statement authorization; and
   (c) all ancillary lien-perfection documents.
2. Execute all post-closing and compliance documents previously requested.
3. Agree in writing to the updated repayment timetable provided by Lender.

## LIMITED INCENTIVES (ONLY if completed by Wednesday 5 PM)

If, and only if, you fully comply by the deadline, Lender will grant:

• A temporary **5-day suspension** of new default interest accrual;
• Reduction of legal fees to **$6,000**.

These concessions are being offered **one time only** and will not be renewed.

## CONSEQUENCES OF NON-COMPLIANCE

If you fail to meet every requirement by the Wednesday deadline, Lender will immediately:

- **File a UCC-1 Financing Statement;**
- **Initiate a civil lawsuit against both Borrower and Guarantor;**
- **Seek full recovery of all principal, coupon, default interest, legal fees, and costs;**
- **Pursue summary judgment against the Guarantor;**
- **Enforce Lender's first-position lien against all collateral, including revenues, media assets, presold territory rights, IP, rebates, and takeout proceeds.**

No further warnings will be issued.

Your immediate written confirmation is required.

Sincerely,

________________________________

**Gavin Owens**

______________________, 2026

Gavin Owens
211 N. Buena Vista
Burbank, CA 91505
pieceofworkprod@aol.com

**Confirmation of Compliance With Conditional Extension Requirements**

Dear Mr. Owens,

I, **Sasha Yelaun**, in my capacities as both **Guarantor** and an authorized representative of **Bunker 13 Movie, LLC**, hereby provide this written confirmation in response to your correspondence dated March 1, 2026, titled *"Immediate Action Required — Imminent Litigation / Final Demand Prior to Enforcement."*

I acknowledge receipt of your letter and **accept the terms of the conditional extension** exactly as stated. Specifically, I confirm the following:

1. **We agree to execute all required collateral and security documents**, including the Security Agreement, UCC-1 Financing Statement authorization, and all necessary lien-perfection and ancillary documents.
2. **We will execute all outstanding post-closing and compliance materials** previously requested.
3. **We agree to finalize and sign the updated repayment timetable** upon receipt.
4. **We understand that all required documents must be completed and returned no later than Wednesday at 5:00 PM**, and acknowledge that this deadline is firm and non-negotiable.
5. **We understand the incentives offered**, including the temporary suspension of additional default interest for five (5) days and the reduction of legal fees to $6,000, and acknowledge that these incentives apply only upon full, timely compliance.
6. **We further understand and accept the consequences of non-compliance**, including immediate filing of a UCC-1, initiation of legal proceedings, pursuit of summary judgment, and full enforcement of all collateral rights without further notice.

Accordingly, this letter shall serve as **my formal written confirmation and commitment to comply fully and promptly** with the requirements outlined in your correspondence.

Please forward any remaining documents requiring execution at your earliest convenience so that we may complete all steps prior to the stated deadline.

Sincerely,

______________________________

**Sasha Yelaun**
Guarantor / Authorized Representative
Bunker 13 Movie, LLC